

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF DELAWARE*

CHRISTOPHER J. VIDETTO,

    Plaintiff,

      V.

WARDEN THOMAS CARROLL,

    Respondent.

**DOCKET NO.**    C 6 - 1 1 1

```
F I L E D

FEB 2 1 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

## PETITION UNDER 28 U.S.C. § 2254
## FOR WRIT OF HABEAS CORPUS BY A
## PERSON IN CUSTODY

---

## MEMORANDUM OF LAW
## IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

---

M. JANE BRADY, ESQ.
ATTORNEY GENERAL
CARVEL STATE BUILDING
820 FRENCH ST.
WILMINGTON, DE. 19801

CHRISTOPHER J. VIDETTO, PRO SE.
INMATE NO. 492696
DELAWARE CORRECTIONS CENTER
1181 PADDOCK RD.
SMYRNA, DE. 19977

DATED: 2/20/06



# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . **i.**

**NATURE AND STAGE OF THE PROCEEDINGS** . . **ii.**

**SUMMARY OF ARGUMENTS** . . . . . **iii.**

**STATEMENT OF FACTS** . . . . . **iv, v, vi.**

## ARGUMENTS:

1.  *Ineffective Counsel-By counsel misrepresenting material facts and or misleading the defendant into pleading guilty.* .1

2.  *Ineffective Counsel-By counsel failing to acquaint the petitioner with the essential nature of the habitual offenders hearing. .* . . . . . .6

3.  *Due Process-The petitioner was prejudiced during his direct appeal by not being advised of new briefing date in time to effectuate appeal and review entire record and Supreme Court rules.* . . . . . .9

4.  *Self Incrimination-Sentencing Court committed plain error by not advising petitioner of the rights he was waiving during his habitual offenders hearing, prior to asking the petitioner about his past convictions.* . . .14

5.  *Abuse of Discretion-Post Conviction Court and Appellant Court abused their discretion by not conducting an evidentiary hearing on certain claims raised on post conviction.* . . . .17

6.  *Abuse of Discretion-By the Superior Court abused their discretion to allow a conviction under the habitual offenders act, when the petitioner was sent to Delaware by use of Interstate Agreement on Detainers Act.* . . . .19

**CONCLUSION** . . . . . . . . .22

## TABLE OF AUTHORITIES

Boykin v. Alabama, 89 S.Ct. 1709, (U.S. Ala. 1969) . . . .15

Collings v. State, Del. Supr. 420 A2d. 170 (1980) . . . .17

Cox v. Hutto, 589 F.2d. 394, (8th cir. 1979) . . . . .7, 15

Cuyler v. Adams, 101 S.Ct. 703, (U.S.Pa. 1981). . . . .20

Government of the Virgin Islands v. George, 741 F.2d. 643, (3rd cir. 1984). 6, 7, 15

Greer v. Mitchell, 264 F.3d 663, 681 (6th Cir.2001) . . . .18

Griffin v. Illinois, 76 S.Ct. 585, (U.S. ILL. 1956 ) . . . . .9

Hill v. Lockhart, 106 S.Ct. 366, (1985) . . . . . .2, 6, 8

Jones v. Barnes, 103 S.Ct. 3308, (1983) . . . . .4

Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir.1987) . . .17

Muscarello v. United States, 118 S.Ct. 1911, (1998) . . .20

Myers v. Collins, 8 F.2d. 249, (C.A. 5 (TEX.) . . . . .12

Reno v. Koray, 115 S.Ct. 2021, (1995) . . . . .20

Strickland v. Washington, 104 S. Ct. 2052, (1984) . . . .2, 6

United States v. Balint, 201 F.3d 928, (7th Cir.2000) . . .20

U.S. v. Couto, 311 F.3d 179, (C.A.2 (N.Y.) 2002) . . . .3

U.S. v. Dawson, 857 F.2d. 923 (3rd cir. 1988) . . . .17

Videtto v. State, 829 A.2d. 936 (2003) . . . . .3, 14, 19

Wright v. Craven, 461 F.2d. 1109 (9th cir. 1972) . . . .7, 15

## RULES, CONSTITUTIONAL PROVISIONS, AND STATUTES

Constitutional Amendment, Fifth . . . . .8
Constitutional Amendment, Sixth . . . . .6, 8
Constitutional Amendment, Fourteenth . . . .8

11 DEL. C. § 2540-2550. . . . . .vi
11 DEL. C § 2549 . . . . . . .19, vi
11 DEL. C. § 4214(a) . . . . . . .vi
11 DEL. C. § 4215(a) . . . . . . .vi, 6, 15

Rule 61(i)(3) . . . . . . .9, 16
Rule 61(1)(4) . . . . . . . .16
Rule 61(i)(5) . . . . . . .9, 14

i

## **NATURE AND STAGE OF PROCEEDINGS**

The petitioner was convicted on December 17, 2002, in the Delaware

Superior Court. The conviction was the result of a plea of guilty, to one

count of burglary second degree, one count of conspiracy second degree,

and one count of theft of a firearms.  The petitioner was sentenced to a 20

years suspended after 15 years at level 5, remainder to be served on

various levels of probation. A timely direct appeal was filed with the

Supreme Court on December 26, 2002. The petitioner proceeded Pro Se on

his direct appeal, and his conviction was affirmed on July 18, 2003. The

petitioner did not seek Certiorari with the U.S. Supreme Court. However,

The petitioner filed for post conviction relief on February 25, 2003, with the

Delaware Superior Court. The motion for post conviction relief was denied

on September 30, 2005. A timely notice of appeal from that order was filed

on October 17, 2005, and that was affirmed on January 24, 2006. Now

comes this timely filed petition for writ of Habeas Corpus pursuant to 28

U.S.C.A. § 2254.

# SUMMARY OF ARGUMENTS

Ineffective Counsel-Whether counsel was ineffective by counsel misrepresenting material facts and or misleading the defendant into pleading guilty.

Ineffective Counsel-Whether counsel ineffective by counsel failing to acquaint the petitioner with the essential nature of the habitual offenders hearing.

Due Process- Whether the petitioner was prejudiced during his direct appeal by not being advised of new briefing date in time to effectuate appeal and review entire record and Supreme Court rules.

Self Incrimination-Whether sentencing Court committed plain error by not advising petitioner of the rights he was waiving during his Habitual Offenders hearing, prior to asking the petitioner about his past convictions.

Abuse of discretion-Whether Post Conviction Court and Appellant Court abused their discretion by not conducting an evidentiary hearing on certain claims raised on Post Conviction.

Abuse of Discretion-Whether the Superior Court abused their discretion to allow a conviction under the habitual offenders act, when the petitioner was sent to Delaware by use of Interstate Agreement on Detainers Act.

## STATEMENT OF FACTS

The petitioner raises Six (6) Grounds in this Petition for Writ of Habeas Corpus. Two (2) claims of ineffective counsel, One (1) claim of Due Process, One (1) claim of Self Incrimination, and Two (2) claims of Abuse of Discretion, all of which raise federal questions dealing with the Constitution. During trial, the petitioner pled guilty in the Superior Court of Delaware, he was advised by counsel that his fingerprint was discovered inside of the burglarized residence, on advice from counsel concerning the fingerprint the petitioner pled guilty, only to discover that the fingerprint was not lifted from the residence, it was lifted from the vehicle, that was taken back to the residence, then processed for fingerprints at the residence, making it seem as if the print was inside of the burglarized residence itself, the discovery clearly shows that what the petitioner claims is accurate, as the petitioner will demonstrate.

Prior to the habitual offenders hearing, counsel should of advised petitioner on the nature of the hearing, as to the rights he would have to forfeit by admitting in open court his prior convictions, counsel's failure to explain to the petitioner the process of the hearing was prejudicial to the defendant, where he had a choice to stand silent and have the state prove the allegations of habitual offenders act, regardless of what counsel claims was part of a negotiated deal, the petitioner should of still been informed of the essential nature of the hearing.

The petitioner proceeded Pro Se on his direct appeal; a hearing was conducted on whether or not the petitioner was aware of the disadvantages

iv

of proceeding Pro Se, the petitioner was brought back to Delaware from Pennsylvania for the hearing, he was held in Delaware for a month after the hearing where he didn't receive any legal correspondence from the Supreme Court clerk, even after informing the clerk of his presence in Delaware, upon his return to Pennsylvania there was an order waiting for him (SCI-CRESSON holds any mail for inmates while on writ to other states) from the Court advising of when his brief was due and informing that " No further extensions will be granted. ", this gave the petitioner two (2) weeks, without adequate material, to do what any lawyer would have a month to do with the complete record, the petitioner immediately filed several motions to the Supreme Court of Delaware to acquire certain things he would need to complete his direct appeal, transcripts, discovery, and rules of court... etc. The petitioner received some things but not all, in time to complete his direct appeal, this relates to the cause and prejudice on Ground Four of this petition.

The sentencing court committed plain error when it inquired into the petitioners past criminal history, prior to advising of the rights, he had during an habitual offenders hearing, its been well established that there need to be clear on the record, that the petitioner be afforded his rights, and on record that he waived these rights, absent a clear record of such, violates the petitioners rights under laws that are established to protect against self incrimination. There was never a colloquy initiated by the court addressing the petitioner of any rights he was waiving concerning the habitual offenders hearing, prior to the admitting of the petitioners criminal history, nor did counsel explain the rights that petitioner

v

had during these proceedings.

There are several issues that require an evidentiary hearing, claims of ineffective counsel being one of those issues, the Superior Court should of conducted a hearing, as to these claims, plus the claim of Due Process dealing with the direct appeal, neither court acknowledge the petitioners claims or the right to an evidentiary hearing.

The petitioner was brought to the State of Delaware pursuant to the Delaware Interstate Agreement of Detainers Act, 11 DEL. C. § 2540-2550, he was convicted and found to be an Habitual Offender pursuant to 11 DEL. C. § 4214(a) and 4215(a) according to the Delaware Interstate Agreement on Detainers Act, 11 DEL. C. § 2549, there was a serious violation, as to the sentencing the petitioner to be a Habitual Offender, since this is dealing with the Interstate Agreement Act, it presents a Federal question where this Court has jurisdiction to address. These statutes require scrutiny as the ambiguous nature in which they are created, according to the Delaware Interstate Agreement on Detainers Act; the petitioner who was brought to justice in Delaware by use of the agreement should not be sentenced as a habitual offender.

vi

## **ARGUMENT**

**1. *Ineffective Counsel-Whether counsel was ineffective by counsel not assuring the plea was made knowingly voluntarily and intelligently entered for misrepresenting material facts and or misleading the defendant into pleading guilty.***

During the process of the filing of the petitioners post conviction relief motion, his knowledge of the facts as related to the law was inadequate, as to the legal language of this claim, he mistakenly presented the question wrong as to the fact that counsel was ineffective by not assuring plea was knowingly, voluntarily, or intelligently entered, this claim has been litigated properly otherwise, in both the Superior Court and Supreme Court of Delaware, and the appropriate language has been inserted here to provide this Court with the circumstances that make this case unique. The petitioner was represented by counsel on this case, counsel purposely or otherwise misled, misrepresented and/or lied to the petitioner concerning facts critical, that related to the petitioner case and his decision to plead guilty. Whereas, on the days leading up to trial counsel informed the petitioner on different occasions that his fingerprints were found at the burglarized residence, **(See; exhibit A - 2, Counsel Affidavit).** During the petitioners direct appeal, he filed several motions to the court, one of which, was for a copy of the discovery in his case, upon receiving and reviewing the discovery closely, the petitioner noticed that his prints were *Not Found,* inside of the burglarized residence as counsel had informed.

The State Bureau of Identification Report indicates that the petitioner's

1

print was removed from a 1990 Lincoln Continental **(See; Exhibit A - 8, 9 & 10, SBI Report);** consequently, the fingerprint does match the petitioners yet the fingerprint did not come from the residence, as counsel had the petitioner believe. The fingerprint, however, came from the car that was processed at the burglarized residence, **(See; exhibit A - 11, police Report dated 4-11-01),** The car was returned to the residence after it was recovered from Pennsylvania, the police went to the residence and dusted the car for prints, the petitioners print was removed from the door handle of the car, as the petitioner, after all, was arrested and charged with receiving stolen property for being in the car in Chester, P.A. This constitutes Ineffective Counsel, where counsel misrepresented the facts to the petitioner, this all went into the decision making process on whether or not to plead guilty, had the petitioner not been denied his Sixth Amendment right to counsel, and wrongly advised of false evidence, evidence that could of easily been rebutted at trial, the petitioner would not of pled guilty.

Under The Supreme Courts decision in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.ed.2D. 203 (1985), The petitioner must show two prongs in order to show a claim of Ineffective Counsel. First, he must show that his counsel's performance falls " below an objective standard of reasonableness " Id. at 369. (quoting; Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.ed.2D. 674 (1984)). second, he must show a " reasonable probability that but for counsels errors, he would not of pled guilty and would of insisted on going to trial ". Hill v. Lockhart, 106 S.Ct. at 370. The conduct of the attorney falls " below an

2

objective standard of reasonableness ", Id. at 369. Where the petitioner's

attorney misrepresented the petitioner's best interest by lying and/or not being

totally aware of the facts surrounding the petitioner case. This misleading

information, that was not even part of the discovery, nor part of any evidence that

places the petitioner at the scene of the burglarized residence, was highly

prejudicial on the petitioners decision making process, while considering entering

into a plea agreement. Had counsel not falsely advised of this misleading

information, the petitioner would of persisted to trial. Id. at 370.

The Supreme Court deemed the petitioners plea as being made

knowingly, voluntarily and intelligently in, Videtto v. State, 829 A.2d 936, (2003

WL 21692214 Del. Super. 2003). However, this issue arises after the direct

appeal process, in which" Videtto " was heard, and since in the State of

Delaware, according to Supreme court ruling and law, the petitioner could not

raise an ineffective counsel claim on direct appeal, therefore, the only means to

bring this claim to the courts attention was through the post conviction relief

motion, in which the petitioner did, could " Videtto " have precedence over this

claim, although this claim arises after the direct appeal, is it justified to assume

that the plea was knowingly entered on the bases of " Videtto ", yet " Videtto ",

can't be related to the claim the petitioner now raises since a plea being

knowingly entered can relate to ineffective counsel claims.

> **An "accused who has not received reasonably effective
> assistance from counsel in deciding to plead guilty
> cannot be bound by that plea because a plea of guilty is
> valid only if made intelligently and voluntarily." U.S. v.
> Couto, 311 F.3d 179, at 187 (C.A.2 (N.Y.) 2002)**

3

The petitioner has been told that he has no merit to this claim, and that counsels performance was adequately sound; the petitioner has demonstrated the two prong test of " Hill ", and shows that he has merit where counsels fabricating advise created a plea of guilty. To satisfy the Sixth Amendment requirement, " counsel must function as an advocate for the petitioner ", Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 3316, (1983) (Brennan, J., dissenting). The issue of effectiveness of counsel is not the culpability of the lawyer, but the Constitutional rights of the client. The performance prong of ineffective counsel claim requires a showing that counsel was not reasonably competent, that counsel failed " to make an adversarial testing process work " and thus was not functioning as the " counsel " guaranteed by the Sixth Amendment." Strickland " 446 U.S. at 690. Informed strategic choices made by counsel after a thorough *investigation of relevant law and facts* and consideration of all possible options are " virtually unchallengeable ".  " Strickland," 466 US at 689-691, 104 S.Ct. at 2065-2066. However, strategy decisions made after a less than complete investigation of law and facts are subject to closer scrutiny, and may be found to sustain a claim of ineffective counsel. Indeed, counsel has a duty to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. A failure to do so will render the lawyer's performance deficient.

The facts upon which a determination can be made whether counsels actions were informed and reasonable, that is, based on a thorough investigation of law and facts and consideration of all plausible options, seldom appear in the

record. Fortunately for the case at bar, absent an evidentiary hearing, the evidence that counsel was defective is clearly within the record as the petitioner has shown. Allegations of ineffective counsel are grounded in the choices made by counsel, and in failing to communicate and/or miscommunication of facts material to the petitioner decision to plead guilty, counsel has failed the critical stage of representing his client, and it is patently obvious that the petitioners attorney did **not** accomplish his task - to **explore, explain, advise** and **counsel** the petitioner regarding the facts of his case. The petitioner is serving a 20 year sentence due to this misinformation from counsel, based on the foregoing argument and the facts that show the petitioner has merit, the petitioner wishes to set aside his habitual offenders adjudication and be resentenced in accordance to the guidelines of burglary 2nd.

### 2.    *Whether petitioner was denied effective assistant of counsel by counsel not acquainting the petitioner with the essential nature of habitual offenders hearing.*

Any petitioner in any criminal proceeding, has the right under the Sixth Amendment of the United States Constitution to have effective counsel, along with other constitutional guarantees, such as, the Fifth and Fourteenth Amendment to due process and the right against self incrimination. Prior to conducting the habitual offenders hearing, the petitioners attorney had an obligation to inform him on how the proceeding was to be had, what was to take place, and what rights were afforded him during this process, to assure that the petitioner had reasonable knowledge of the proceedings, counsel should explained to the petitioner his rights going into the hearing and/or at least explained what the proceeding required him to do.

According to 11 DEL. C. § 4215(a), the petitioner had the right to stand silent when the court asked whether or not his three prior convictions were accurate, had the petitioner known of his rights before the hearing he would not of admitted to the priors, but instead had the state prove the allegations against him, regardless if it was part of the plea as counsel insists, the petitioner should still have been made aware of the proceedings and the rights he was waiving. Government of the Virgin Island v. George, 741 F.2d 643 (1984), counsels failure to advise the petitioner of these rights, creates a claim under Hill v. Lockhart, 474 U.S.52, 106 S.Ct. 366, 88 L.Ed. 2d. 203 (1985). The petitioner must meet the two-prong test of " Hill " citing Strickland v. Washington, 466 U.S.

6

668, 104 S. Ct. 2052, 80 L.ed.2D. 674 (1984).

Had the advise from counsel been reasonable and informed as to the
events to come from the hearing, there would be no question as to whether
counsel made the appropriate choice in advising the petitioner to plead guilty,
that not being the case here brings scrutiny to the decisions made related to the
admission. See; Cox v. Hutto, 589 F.2d. 394 (8th cir. 1979), Wright v. Craven,
461 F.2d. 1109, (9th cir. 1972), and " George " quoting;

> **Before a defendant who is charged under
> the habitual criminal statute is asked to admit to
> previous convictions, the court must personally
> address the defendant and determine that he
> understands the consequences of such an
> admission. Id. at 649.**

Nevertheless, the court did not follow this procedure, nor did counsel
advise the petitioner of such rights, the petitioner having no knowledge of the
rights mentioned nor the working of the proceeding can't make a determination
regarding whether to remain silent when the court openly asked about the
petitioners three prior convictions. This constitutes; Ineffective Counsel, Due
Process and Self Incrimination, where there never was an inquiry into the
petitioner's knowledge, on the record by the court or by counsel to assure the
rights that create a Liberty interest where freedom is in jeopardy are protected.
Had the petitioner known that by admitting to the three prior convictions, relieves
the state of its burden to prove the status of habitual offenders adjudication, he
would have stood silent and/or refused to answer the judge when he asked
about the three priors (See; exhibit A-20 to A-21 Habitual Offenders transcripts).

The petitioner was permitted by the court, and counsel, whose obligation it was to protect the petitioners rights, did allow the petitioner to commit self incrimination, violating the petitioners due process rights in accordance with the constitution, establishing that certain violations occurred during this proceeding the grounds are related to " Hill " dealing with the ineffective counsel claim. Counsel's actions or inactions clearly prejudiced the petitioner and as a result three pertinent constitutional violations occurred, Fifth, Sixth and Fourteenth Amendments, all in one single process counsels performance was inadequately placed upon the petitioner and infringed upon his constitutional rights. The habitual offenders adjudication should be vacated and resentenced in accord with the guidelines of burglary 2nd.

3.    **Whether petitioner was prejudiced during his
direct appeal by not being advised of new briefing
date in time to effectuate appeal and review entire
record and court rules.**

There seems to be some disregard as to this claim by the lower courts,

and how they refuse to entertain that someone within their court, made a mistake

toward the petitioners direct appeal. This issue was deemed barred by the

courts, because it was not raised on direct appeal, yet this issue was unable to

be raised on direct appeal, because it happened during the direct appeal process

and was not able to be brought to the courts attention until the petitioner filed his

post conviction relief motion with the Superior Court. This issue is not barred by

rule 61(i)(3), anyone who takes their time to read and understand the facts within

this issue will realize that, this issue is preserved under rule 61(i)(5), and is ripe

for litigation. Since this occurred during the petitioner's direct appeal, and there

being no way to diligently bring it to the courts attention, except to raise in a rule

61. The history of events are as follows concerning the direct appeal process of

the petitioner, several things took place that hindered the petitioner and his right

to have a fair proceeding as required by law, not that the rules of court were

difficult to follow as the lower Court and State would this Court believe. Any

petitioner is entitled to a direct review in the state court, if that process is offered

within the state, the Constitution allows for such process, Griffin v. Illinois, 76

S.Ct. 585, 351 U.S. 12 (U.S. ILL. 1956). Facts listed below:

On December 26, 2002, the petitioner filed a Pro Se notice of appeal

(See; exhibit A-37, Supreme Court docket sheet), the clerk of the Supreme Court

9

sent a letter to the petitioner's attorney of record regarding his on going obligation to the petitioner. On January 7, 2003, attorney for the petitioner filed his formal notice of appeal, and designation of transcripts. In the same token the petitioner filed a state habeas corpus on December 26, 2002. (See; exhibit A-41, Superior Court docket sheet.), which was denied on December 27, 2002, the petitioner filed an appeal on January 8, 2003, concerning the state habeas corpus, (See; exhibit A-33, Superior docket). Since the petitioner's presence was obtained by interstate agreement on detainers to Delaware (See; exhibit A-40, Superior docket), the petitioner was sent back to Pennsylvania shortly after he filed these appeals (See; exhibit A-41, Superior docket). (NOTE: petitioner does not mention the state habeas on appeal because he chose to withdraw it at the time of the consolidated appeal.)

Prior to leaving the state of Delaware, the petitioner was housed in the S.H.U. area of the prison where he met another inmate who had assisted him with the filing of the notice of direct appeal and habeas corpus, to both the Supreme and Superior Courts, said inmate told the petitioner, who had no prior legal training or knowledge of the law, that he would continue to help him even after he returned to Pennsylvania the inmate had the petitioner sign a 26(d)(iii) motion before he left Delaware, along with a power of attorney so that the petitioners mother could sign all the petitioners legal documents, the documents coming from the inmate in Delaware, the 26(d)(iii) motion was left with the inmate, with the understanding that it may be used at a later date, the inmate sent the 26(d)(iii) motion to the petitioners mother, she not knowing what to do

10

with the paper, being a legal document, with the petitioners name on it, sent it off to the court. (See; exhibit A-38, Supreme docket). Following the filing of the 26(d)(iii) motion the case was remanded to the Superior Court for an evidentiary hearing. The petitioner presence was secured for the hearing on April 10, 2003, the hearing was held on April 11, 2003, to advise the petitioner of the disadvantages of proceeding Pro Se, during the hearing the petitioner informed the court that he was unsure how the operation of law worked, but that he still would like to proceed Pro Se. This was decided because the petitioner was under the impression that he had help from the above mentioned inmate, this idea back fired, do to the mailing of legal documents back and forth to the petitioners mother then the petitioner himself, by the time the petitioner received the mail it would be too late, he went on to handle it himself, and still was unsuccessful because he was prejudiced in trying to obtain legal documents from certain people, i.e. Lawyer, Court Clerk ...etc.

However, keep in mind that the petitioner was kept in Delaware for one (1) whole month after the determination to proceed Pro Se was decided on April 11, 2003. The petitioner was transferred back to Pennsylvania on May 12, 2003. Upon his return, he would receive his mail that was sent to SCI-Cresson, while the petitioner was on writ to Delaware, he would get this mail that Friday being May 15, 2003. And although the petitioner notified the court clerk as to his whereabouts, his mail would still be sent to the prison at SCI-Cresson in Pennsylvania. That Friday when the petitioner got his mail, there was an order from the Supreme Court advising the petitioner of his briefing date, scheduled for

11

June 6, 2003, and advising that, **" No further extensions of this deadline will be granted."** (See; exhibit A30 to A-32, Order). after receiving the order, the petitioner filed several motions to the Court for different legal materials that he would need to conduct his appeal, an attorney has access to all the material needed to conduct appeals, if the petitioner is acting Pro Se, he is acting as his own counsel, then he should be given ample access to the things needed to prefect his own appeal, and since Due Process extends to a direct appeal, Myers v. Collins, 8 F.2d. 249, at 252, (C.A. 5 (TEX.) 1993). The petitioner believed that he had no opportunities left concerning an extension of time to file his brief, because of the order from the court of, **" No further extensions of this deadline will be granted."** After he filed several motions to the court for the things he would need, the petitioner started working on his brief in hopes that the material needed would come before he had to send in his brief.

As it got closer to the deadline of June 6, 2003, the petitioner not wanting to be considered abandoning his own direct appeal sent in a brief in which was a half attempt to comply with the order. Shortly thereafter, the petitioner received an order, due to the motions filed, extending his brief deadline to July 7, 2003, (See; exhibit A-39 at 30, Supreme docket).

Prejudice to the petitioner is shown by, 1.) Not being informed of the order of May 7, 2003, causing the defendant to miss eight (8) days on the thirty (30) days allotted to file appeal. 2.) the petitioner being in legis limbo, between states, without access to his legal materials. 3.) by not receiving the appropriate paperwork (transcripts) in a timely manner from counsel when defendant made

12

the request on a couple occasions. 4.) the petitioner being ordered, **" No further extensions of this deadline will be granted."** By the Supreme Court Justice, had the petitioner *not been persuaded,* by that order he would of filed for the extension himself and then would of been conscious of any new date and would have had the appropriate information needed to complete his direct appeal.

Looking at the entire picture related to the facts in this claim, there can be no doubt as to the prejudice the petitioner suffered during his direct appeal process, it's not that the petitioner could not understand any complex rules of court, as the court would have this Court believe, it's just a ploy to cover themselves from having to allow the petitioner an appeal **Nunc Pro Tunc.** Certain issues within this appeal are of First Impression within the state, and the state, rather than deal with it, wants to deny any merit within the claims, although they relate to the Constitution and Federal Law. The petitioner being denied control over his appeal process, by the state court, should be entitled to an appeal Nunc Pro Tunc, and/or have Ground Four, of this petition litigated and considered due to the related facts within this claim.

### 4.    Whether sentencing Court committed plain error by not advising petitioner of his rights during habitual offenders hearing before asking petitioner about prior convictions.

This issue is preserved under Rule 61(i)(5), where a miscarriage of justice centralizes a Constitutional violation, undermining the fairness standard set forth within said rule. There should be consideration of this violation related to the habitual offenders hearing, concerning the need for, *just and fair,* proceedings dealing with the miscarriage of justice which has taken place with the Constitutional violation, dealing with the hearing where certain rights are afforded any petitioner who's liberty is jeopardized with an extended term of imprisonment or where it places the petitioner under the presumption of admitting to priors before he is aware of the consequences.

This issue was deemed previously litigated on direct appeal, so it was barred under Rule 61(i)(4), yet in Videtto v. State, 829 A.2d. 936 (2003), there is nothing that is remotely close to this issue as being previously litigated, although it could be assumed that by declaring a plea, knowingly entered, that it washes away any and all fault, that happened prior to the to the accepting of the plea itself, it could be assumed that way, if in fact by entertaining it or acknowledging the merit, a door is opened that creates a retroactively applied law, its easier to place it aside by declaring it barred because of a plea being knowingly entered, that can't be the case on every issue, with every Court, especially where there is a liberty interest, such as the one that presents itself here.

Having established that this issue deserves its due course, there needs to

14

be some resolution, as to the allowing the petitioner to commit self incrimination. When the court inquired into the petitioners prior convictions, before advising the petitioner of his privileges, he violates his Constitutional rights, its been well established in many State and Federal Courts, that if the petitioner is not aware of the consequences before being asked to admit to his prior convictions, and it is not clear on the record that the Court made an inquiry into the knowledge of the rights the petitioner forfeits, the Court commits plain error.

Its been found that admitting to habitual offender status is the " functional equivalent " to pleading guilty, and there should be a colloquy to be sure that the petitioner is aware of the consequences of stipulating to such an admission. Government of the Virgin Islands v. George, 741 F.2d. 643, (3rd cir. 1984), Cox v. Hutto, 589 F.2d. 394, (8th cir. 1979), Wright v. Craven, 461 F.2d. 1109 (9th cir. 1972), These three Circuit Courts all agree that the Boykin v. Alabama, 89 S.Ct. 1709, 395 U.S. 238, 23 L.Ed.2d 274 (U.S. Ala. 1969), process on dealing with pleas extends to an habitual offenders hearing. This being the case, there was a serious injustice done in regards to the petitioners habitual offenders hearing where the Court fails to apply state law in 11 DEL. C. § 4215(a), ((advising the petitioner he had a right to stand silent), and Federal law where " George " has established a guideline for dealing with an habitual offenders hearing Id. at 650. The habitual offenders hearing that was conducted on December 17, 2002, shows that this process never took place violating the petitioner's rights. (See; exhibit A-20 to A21, transcripts).

There seems to be precedence within our own Circuit court of Appeals, on

15

how the procedure for determining habitual offenders status should be, to assure that the rights of the accused are protected, the hearing guarantees that no adverse procedure is set in place to violate a persons Constitutional rights, created by the Fifth and Fourteenth Amendments. This case particular is of First Impression within the state of Delaware, and with the severity of the constitutional violations this issue needs to be addressed, and since this issue relates to Ground Three of this petition and the cause and prejudice test is met through Ground Three, this Court can entertain the question herein, and if this Court deems this issue as not being met and controlled by Ground Three of this petition, then the Court needs to look at the fact that this issue not being previously litigated, and the wrongly applied statute of Rule 61(1)(4) excuses the barment of this claim, because Rule 61(i)(3) should of been the correctly applied statute. The petitioner seeks to have the habitual offenders adjudication vacated and sentenced under the guidelines consistent to burglary 2nd.

### 5.    Whether post conviction court erred by not conducting an evidentiary hearing.

On August 18, 2004, the petitioner filed a motion for an evidentiary hearing concerning certain claims within his post conviction relief motion, the Court having abused their discretion when denying said motion, especially where ineffective cousel claims are attached to the post conviction relief motion. Certain claims require a hearing to expand the record and make clear what the facts are, also to give other claims an oppertunity to be tested, such as whether the petitioner should be time barred on certain claims raised within his post conviction relief motion. The Supreme court violated their own rule of law when the Court denied the petitioners motion without holding an evidentiary when the Court has ruled in a prior case that the Court would not even entertain an ineffective counsel claim without one. <u>Collings v. State</u>, Del. Supr. 420 A2d. 170 (1980).

Not only is counsel entitled to a hearing so that he may be heard, the petitioner is equally entitled to a hearing to determine other issues not found in the record, <u>U.S. v. Dawson</u>, 857 F.2d. 923 (3rd cir. 4988), the abused its discretion by not holding a hearing on the petitioners claims,

> **As a general rule in dealing with the merits of a petition for habeas corpus, where there are material facts in dispute which if proven would entitle a petitioner to relief and the petitioner has not been afforded a full and fair evidentiary hearing in state court, either at the time of trial or in a collateral proceeding, a federal habeas court must hold an evidentiary hearing. <u>Mayberry v. Petsock</u>, 821 F.2d 179, 185 (3d Cir.1987)**

17

" Mayberry " shows how in the state court the petitioner should of been given a fair evidentiary hearing as to the claims within this petition, there is plenty of case law dealing with an evidentiary hearing, cases for State, dealing with Post Conviction Relief Motion, cases for Federal dealing with Habeas Corpus Petitions, See; Greer v. Mitchell, 264 F.3d 663, 681 (6th Cir.2001) (This Court concludes that petitioner is entitled to an evidentiary hearing on these ineffective assistance of counsel claims. By requesting an evidentiary hearing on his ineffective assistance of counsel claims in his state post-conviction proceedings, petitioner demonstrated due diligence, for purposes of § 2254(e)(2).) The petitioner request that this court hold an evidentiary hearing on the claims herein, the petitioner believes that that the criteria for an evidentiary hearing has been met and the petitioner prays that this Court agrees.

18

**6.     Whether Superior Court abused their discretion to
        allow a conviction under the Habitual Offenders
        Act, when the petitioner was brought to Delaware
        by use of Interstate Agreement on Detainers act.**

The petitioner was brought to Delaware from Pennsylvania, by the

petitioner filing for Interstate Agreement on Detainers with the prison he was

incarcerated at in Pennsylvania. The petitioner has reason to believe that this

matter is of **First Impression** within the State of Delaware, as well as the

Federal District and Circuit Courts. After thorough research and investigation into

the many cases dealing with Interstate Agreement on Detainers, as with the

Habitual Offenders Act, the petitioner finds nothing similar to this issue presented

herein, yet some how this statute is part of the Delaware Interstate Agreement

on Detainers Act, 11 Del. C. § 2549, which states:

> *Nothing in this agreement shall be construed to
> require the application of the habitual offenders
> law to any person on account of any conviction
> had in any proceeding brought to final disposition
> by reason of the use of this agreement.*

The interpretation of this statute was not even given consideration as to

any meaning for which 11 Del. C. § 2549 stands for or what it represents, in

Videtto v. State, 829 A.2d. 936 (2003), the petitioner believes this to mean

exactly what it says, that the Habitual Offenders adjudication does not apply to

anyone who is brought to final disposition by the use of Interstate Agreement on

Detainers, that seems to be the case and since the petitioner was brought to

final disposition by use the use of said agreement, the imposed sentence is

illegal, this Court has the authority to answer this question," Because this Act was

19

intended to be a grant of consent under the Compact Clause, and because the subject matter of the Act is an appropriate subject for congressional legislation, we conclude that the Detainer Agreement is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law ". Cuyler v. Adams, 101 S.Ct. 703, 708-709, 449 U.S. 433, (U.S.Pa. 1981).

However the case may be, the situation that takes place as related to the statute 11 Del. C. § 2549, there is no easy interpretation where the issue draws off of **First Impression**, it could be distinguished also as the need to apply rule of lenity. Under the rule of lenity, grievous ambiguity in a statute is resolved in the defendant's favor. The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." Muscarello v. United States, 524 U.S. 125, 138-39, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). Rather, the rule only applies if "there is a grievous ambiguity or uncertainty in the statute." Id. at 139, 118 S.Ct. 1911. Furthermore, lenity "applies only if, after seizing everything from which aid can be derived, a court can make no more than a guess as to what Congress intended." Reno v. Koray, 515 U.S. 50, 65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), United States v. Balint, 201 F.3d 928, 935 (7th Cir.2000) ("The rule of lenity is unavailable to us if the purported ambiguity in a statute can be resolved through normal methods of statutory construction.").

The petitoner feels that he has shown a " Prima Facie Case ", as the record shows that the petitioner was brought to Delaware by reason of the use of Interstate Agreements on Detainers, he was declared an habitual offender, there

20

is a showing that through the states own enacted upon statute that the petitioner should not have been declared habitual offender, upon consideration of these facts a question of First Ipmression arises, as well as the dealing with the statute as through rule of lenity. The petitioner seeks to vacate the entire sentence for its violation of the forementioned statute and the rule of lenity.

## CONCLUSION

In the light of the aforementioned, the petitioner requests that this Honorable Court grant his Petition for Writ of Habeas Corpus, and he prays that he be given any and all relief he may be entitled to.

(Without Prejudice)

Respectfully Submitted,

Christopher J. Videtto, Pro Se.

Dated: 2/20/06

22

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CHRISTOPHER J. VIDETTO,** | : | |
| **Plaintiff,** | : | |
| **V.** | : | **DOCKET NO.** |
| **WARDEN THOMAS CARROLL,** | : | |
| **Respondent.** | : | |
| | : | |

## AFFIDAVIT OF SERVICE

I, Christopher J. Videtto, Petitioner, hereby certify that I mailed via Delaware Corrections Center mail box, (1) one original and (2) copies of my Petition for Habeas Corpus and memorandum of law in support of the same Petition to the Clerk of the District Court and service of (1) one copy to the Attorney General M. Jane Brady and Warden Thomas Carroll to the following addresses listed below:

**Warden Thomas Carroll**
Delaware Corrections Center
1181 Paddock Rd.
Smyrna, DE 19977

**M. Jane Brady, Esq.**
Carvel State Building
820. N. French st.
Wilm. DE 19801

**Clerk of the District Court**
U.S. Courthouse
844 King St. LockBox 18.
Wilm. DE 19801

I, Christopher J. Videtto, Petitioner, hereby certify that the above statements made by me are true. I am aware that if any of the above statements made by me are willfully false I am subject to punishment.

Christopher J. Videtto, Pro Se.

Sworn and subscribed to and before me
this _16_ day of _FEBRUARY_ , 2006
_____, Notary Public

DAVID J LEONARD
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 4-16-2007