IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER J. VIDETTO, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 06-111-JJF |
| | : | |
| THOMAS CARROLL,  Warden, and | : | |
| ATTORNEY GENERAL OF THE STATE | : | |
| OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

---

Christopher J. Videtto.  Pro se Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the DELAWARE
DEPARTMENT OF JUSTICE, Wilmington, Delaware.  Attorney for
Respondent.

---

### MEMORANDUM OPINION

March 22, 2007
Wilmington, Delaware

*Joseph J. Farnan Jr.*

Farnan, District Judge

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Christopher J. Videtto ("Petitioner"). (D.I. 2.) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2002, a Delaware state grand jury returned an Indictment charging Petitioner with second degree burglary, two counts of theft, two counts of theft of a firearm, second degree conspiracy, and criminal mischief. (D.I. 30, Grand Jury Indictment in State v. Videtto, ID No. 0104008670). The charges stemmed from an April 5, 2001 residential burglary and theft of the homeowner's automobile.

Petitioner's jury trial began in the Delaware Superior Court in December, 2002. On the second day of his trial, Petitioner entered a written plea agreement, in which he agreed to plead guilty to second degree burglary, one count of second degree conspiracy, and one count of theft of a firearm. Petitioner's plea agreement also contained a stipulation that Petitioner was an habitual offender as defined in Del. C. Ann. tit. 11, § 4214(a). (D.I. 30.) After conducting a combined plea colloquy and habitual offender hearing, the Superior Court sentenced Petitioner as an habitual offender to twenty years at Level V

1

incarceration, to be suspended after fifteen years for one and a half years at decreasing levels of supervision. See Videtto v. State, 2003 WL 21692214, at *1 (Del. July 18, 2003).

Thereafter, Petitioner's counsel filed a notice of appeal in the Delaware Supreme Court and Petitioner filed a pro se petition for a writ of habeas corpus in the Delaware Superior Court. The Superior Court denied the habeas corpus petition on December 27, 2002, and Petitioner appealed. Id.

Petitioner also filed a motion to proceed pro se in his direct appeal, and the Delaware Supreme Court remanded the case to the Superior Court for a hearing on that motion. The Superior Court held a hearing and concluded that Petitioner's decision to proceed pro se on appeal was voluntary and informed. As a result, the Delaware Supreme Court granted Petitioner's motion to proceed pro se in his direct appeal. The Delaware Supreme Court consolidated Petitioner's two appeals, and affirmed Petitioner's convictions and sentences as well as the Superior Court's denial of Petitioner's habeas petition. Id. at *2.

In February 2004, Petitioner filed a motion for state post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion in September 2005, and the Delaware Supreme Court affirmed the Superior Court's decision on January 24, 2006. Videtto v. State, 2006 WL 196440 (Del. Jan. 24, 2006).

2

Petitioner timely filed the instant Petition in February, 2006.  (D.I. 2.)  The State filed an Answer, asserting that the Petition should be dismissed.  (D.I. 24.)

## II.   GOVERNING LEGAL PRINCIPLES

### A. EXHAUSTION AND PROCEDURAL DEFAULT

Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief for his claims under state law.  28 U.S.C. § 2254(b);  O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999);  Picard v. Connor, 404 U.S. 270, 275 (1971).  A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the state courts to consider it on the merits.  See Duncan v. Henry, 513 U.S. 364, 365 (1995);  Castille v. Peoples, 489 U.S. 346, 351 (1989);  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner fairly presents a habeas claim to the state's highest court, but the state court refuses to consider the claim because the petitioner failed to comply with an independent and adequate state procedural rule, the claim is deemed exhausted but procedurally defaulted.  Harris v. Reed, 489 U.S. 255, 263 (1989);  Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  Federal courts cannot review the merits of

3

procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999);  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991);  <u>Caswell v. Ryan</u>, 953 F.2d 853, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show that the errors during his trial worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  <u>Id.</u> at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  <u>Murray</u>, 477 U.S. at 496; <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000);  <u>Wenger v. Frank</u>, 266 F.3d 218, 224 (3d Cir. 2001).  Actual innocence means factual innocence, not legal insufficiency, and the miscarriage of justice exception applies only in extraordinary cases.  <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998);  <u>Murray</u>, 477 U.S. at

4

496.  A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.  Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

**B.   STANDARD OF REVIEW**

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court decision constitutes an adjudication on the merits for the purposes of § 2254(d) if the "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 545 U.S. 374 (2005).  Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2);

<u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000); <u>Appel v. Horn</u>, 250

F.3d 203, 210 (3d Cir. 2001).

When reviewing a habeas claim, a federal court must presume

that the state court's determinations of factual issues are

correct.  28 U.S.C. § 2254(e)(1).  This presumption of

correctness applies to both explicit and implicit findings of

fact, and is only rebutted by clear and convincing evidence to

the contrary.  28 U.S.C. § 2254(e)(1); <u>Campbell v. Vaughn</u>, 209

F.3d 280, 286 (3d Cir. 2000); <u>Miller-El v. Cockrell</u>, 537 U.S.

322, 341 (2003)(stating that the clear and convincing standard in

§ 2254(e)(1) applies to factual issues, whereas the unreasonable

application standard of § 2254(d)(2) applies to factual

decisions).

## III.  DISCUSSION

Petitioner asserts six grounds for relief: (1) counsel

provided ineffective assistance by erroneously telling Petitioner

that his fingerprint was found in the burglarized residence, when

the fingerprint was actually found on the victim's stolen

automobile; (2) counsel provided ineffective assistance during

the habitual offender portion of the plea colloquy by failing to

inform Petitioner that he did not have to admit his New Jersey

convictions in open court; (3) the Delaware Supreme Court

violated Petitioner's right to due process by failing to ensure

that Petitioner was timely notified of a new briefing date during

6

his direct appeal; (4) the Superior Court failed to inform
Petitioner of the rights he was waiving during the habitual
offender portion of his plea colloquy; (5) the Superior Court
should have conducted an evidentiary hearing on Petitioner's Rule
61 motion; and (6) Petitioner was erroneously sentenced as an
habitual offender because he was in Delaware pursuant to the
Interstate Agreement on Detainers Act.  Petitioner exhausted
state remedies for all six claims because he presented the claims
to the Delaware Supreme Court on direct appeal or on post-
conviction appeal.  Nevertheless, for the following reasons, the
Court concludes that none of Petitioner's claims warrant federal
habeas relief.

### A.  Claims One and Two: Ineffective Assistance of Counsel

The Delaware Supreme Court denied Petitioner's two
ineffective assistance of counsel claims as meritless.
Therefore, the Court must determine if the Delaware Supreme
Court's decision is either contrary to, or an unreasonable
application of, clearly settled Supreme Court precedent.

The clearly established Supreme Court precedent governing
ineffective assistance of counsel claims is the two-pronged
standard enunciated by Strickland v. Washington, 466 U.S. 668
(1984) and its progeny.  See Wiggins v. Smith, 539 U.S. 510
(2003).  Under the first Strickland prong, a petitioner must
demonstrate that "counsel's representation fell below an

7

objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688.  Under the second Strickland prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 688.  In the context of a guilty plea, a petitioner satisfies Strickland's prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." Strickland, 466 U.S. at 689.

Here, both the Delaware Superior Court and the Delaware Supreme Court correctly identified the Strickland/Hill standard and analyzed the instant ineffective assistance of counsel claims within its framework.[1]  Therefore, the Court concludes that the

_____

[1]The Delaware Superior Court adopted the Commissioner's Report and Recommendation, which cited and applied Strickland and Hill. See State v. Videtto, ID No. 01040008670, Order, Vaughn, Pres. Judge (Del. Super. Ct. Sept. 30, 2005).  The Delaware Supreme Court cited to Skinner v. State, 607 A.2d 1170, 1172 (Del. 1992), which, in turn, applied Strickland.

Delaware Supreme Court's denial of Claims One and Two was not contrary to Strickland or Hill.  See Williams, 529 U.S. at 406.

The Court must also determine whether the Delaware Supreme Court's denial of the claims constituted an unreasonable application of the Strickland/Hill standard to the facts of Petitioner's case.  In Claim One, Petitioner contends that his guilty plea was involuntary and unknowing because counsel misled him by telling him that his fingerprint was found in the burglarized residence, when in fact the fingerprint was found on the victim's stolen car.  According to Petitioner, he did not discover counsel's mistake regarding the location of his fingerprint until he obtained a copy of the fingerprint analysis report during the discovery phase in his direct appeal.  (D.I. 30, Appellant's App. in Videtto v. State, No.493, 2005, at A-10.) Petitioner asserts that he would not have pled guilty had he known that his fingerprint was found on the car and not in the residence.[2]  The Delaware Supreme Court denied this claim in part because Petitioner stated during his plea colloquy that he was

---

[2]The fingerprint analysis report states that Petitioner's fingerprint was found on the right front door of the victim's automobile.  (D.I. 30, Appellant's App. in Videtto v. State, No.493,2005, at A-10.)  Counsel's Rule 61 affidavit claims that Petitioner's fingerprint was found in the victim's residence. Id. at A-2.  Given the discrepancy between the fingerprint analysis report and counsel's affidavit, the Court accepts Petitioner's allegation that counsel provided the same incorrect information about the location of the fingerprint prior to Petitioner's guilty plea.

satisfied with his counsel's performance, and the state supreme
court never referenced Petitioner's contention that counsel
provided erroneous information regarding the location of the
fingerprint.

It is well-settled that "[s]olemn declarations in open court
carry a strong presumption of verity," and courts often refer to
statements made by a defendant during the plea colloquy when
determining if a guilty plea was knowing and voluntary, or if
defense counsel rendered constitutionally ineffective assistance
of counsel.  Blackledge v. Allison, 431 U.S. 63, 74 (1977).
However, the Supreme Court has held that, "[i]n administering the
writ of habeas corpus . . . the federal courts cannot fairly
adopt a per se rule excluding all possibility that a defendant's
representations at the time his guilty plea was accepted were so
much the product of such factors as misunderstanding, duress, or
misrepresentation by others as to make the guilty plea a
constitutionally inadequate basis for imprisonment."  Id. at 75.
In fact, at least one federal circuit court has recognized that
statements by a criminal defendant expressing satisfaction with
his lawyer at the time of his plea are irrelevant to a court's
inquiry into a subsequent ineffective assistance of counsel claim
when the defendant was unaware of his lawyer's errors at the time

of the plea.[3]  <u>United States v. Giardino</u>, 797 F.2d 30, 32 (1st
Cir. 1986).

Regardless of whether the Delaware Supreme Court erred in
accepting Petitoner's statement regarding his satisfaction with
counsel, the Court concludes that the Delaware Supreme Court's
denial of the instant claim, evaluated objectively and on the
merits, did not result in an outcome that cannot reasonably be
justified under the <u>Strickland/Hill</u> standard.  See <u>Hackett v.
Price</u>, 381 F.3d 281, 287 (3d Cir. 2004).  During his plea
colloquy, Petitioner apologized to the victim and admitted his
guilt to the Superior Court.  Petitioner does not challenge the
veracity of those statements, and the Court fails to see how
Petitioner's belief that his fingerprint was found in the house
could have caused him to make an unwilling or untruthful apology.
Thus, even if the Delaware Supreme Court should not have
considered Petitioner's statement that he was satisfied with
counsel's performance, the Delaware Supreme Court reasonably
considered the other statements Petitioner made during the plea
colloquy in determining whether counsel provided ineffective
assistance.

---

[3]A court may consider the decisions rendered by lower
federal courts in determining whether the state court reasonably
applied Supreme Court precedent.  See, e.g., <u>Chadwick v. Janecka</u>,
312 F.3d 597, 613 (3d Cir. 2002).

11

Further, in <u>Hill</u>, the Supreme Court explained that "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that the discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."  <u>Hill</u>, 474 U.S. at 59.  Here, Petitioner confessed to committing the burglary of the residence in a written and signed statement.  Prior to trial, counsel moved to suppress the confession, but the Superior Court denied that motion.  <u>See</u> (D.I. 4, at A-3; Del. Super. Ct. Crim. Dkt. at No. 12.)  Given the fact that Petitioner's confession would have been admissible at trial, Petitioner cannot demonstrate a reasonable probability that he would have proceeded to trial if he knew the fingerprint was found on the victim's car and not in the residence.  In turn, Petitioner also cannot demonstrate a reasonable probability that a trial would have resulted in a different outcome.  Therefore, the Court will deny Claim One because Petitioner has not established prejudice under the <u>Strickland/Hill</u> standard.

In Claim Two, Petitioner contends that counsel provided ineffective assistance during the habitual offender portion of

12

his plea colloquy by failing to inform Petitioner that he could remain silent when asked about his prior convictions.   The Delaware Supreme Court denied the claim as meritless on post-conviction appeal because Petitioner did not establish prejudice stemming from that alleged failure on counsel's part.

In this case, Petitioner's plea agreement contained a stipulation that he was an habitual offender under 11 Del. C. § 4214(a).  (D.I. 30, Plea Agreement, Exh. C. attached to State's Motion to Affirm, Del. Supr. Nos. 714,2002 & 8,2003).   During his plea colloquy and habitual offender hearing, Petitioner never challenged the accuracy of the criminal record which led to his stipulation and, even now, Petitioner does not challenge the accuracy of the stipulated criminal record.   Thus, based on the record, the Court concludes that the Delaware Supreme Court reasonably applied the Strickland/Hill standard in finding that Petitioner was not prejudiced by counsel's failure to advise him to remain silent during the habitual offender portion of his colloquy.   Accordingly, the Court will deny Claim Two.

**B.   Claim Three:   Defective Direct Appeal Procedure**

In Claim Three, Petitioner contends that the Delaware Supreme Court violated his right to due process by failing to timely inform him of the original appellate briefing date of June 6, 2003, and by failing to timely inform him when the court extended the briefing date to July 7, 2003.   Petitioner asserts

that these delays caused him to file an incomplete appellate brief, and that the Delaware Supreme Court prevented Petitioner from exercising control over his appeal process.[4]  (D.I. 3, at 16.)

Petitioner presented his due process claim to the Delaware Supreme Court on post-conviction appeal, but the Delaware Supreme Court did not address the claim on its merits.[5]  Thus, the Court must review the claim de novo, under pre-AEDPA standards.[6] Holloway v. Horn, 355 F.3d 707, 718 (3d Cir. 2004)(a state court opinion which does not even mention a federal constitutional claim does not constitute an adjudication on the merits).

_____

[4]Although Petitioner phrases Claim Three as a violation of due process, it appears that he may be attempting to argue that the Delaware Supreme Court's delayed notification of the filing deadline interfered with his access to the court.  If Petitioner is asserting a lack of access claim, he has improperly asserted the claim in the instant Petition because an access claim does not challenge the length or legality of his confinement .  See Preiser v. Rodriguez, 411 U.S. 475, 494 (1973).  Additionally, the claim is not viable because Petitioner has not proven actual prejudice stemming from the alleged interference with his right to court access.  Lewis v. Casey, 518 U.S. 343, 351-53 (1996).

[5]Rather, the state supreme court focused on Petitioner's allegation that he was denied access to certain documents and court rules that he needed in order to timely pursue his appeal, and denied those allegations as meritless.  See Videtto, 2006 WL 196440, at *2.

[6]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." Williams, 529 U.S. at 400 (Justice O'Connor concurring).

14

When, as here, a state provides an appellate process, the
appellant is entitled to the same due process and equal
protection rights applicable in his criminal trial.  See Griffin
v. Illinois, 351 U.S. 12, 17 (1956).  The minimum requirements of
due process are notice and an opportunity to be heard.  See
Goldberg v. Kelly, 397 U.S. 254, 267-68 (1970).  Due process "is
flexible and calls for such procedural protections as the
particular situation demands" in order "to minimiz[e] the risk of
error."  Greenholz v. Inmates of the Neb. Penal and Corr.
Complex, 442 U.S. 1, 12-13 (1979);  Reynolds v. Wagner, 128 F.3d
166, 179 (3d Cir. 1997)("The amount of notice due depends on the
context.").

The record reveals that Petitioner was transferred from
prison in Pennsylvania to a Delaware state prison in April 2003
so that Petitioner could attend the evidentiary hearing regarding
Petitioner's motion to proceed pro se on appeal.  Petitioner was
housed in the Delaware state prison from April 10, 2003 through
May 11, 2003.  On May 7, 2003, the Delaware Supreme Court issued
an Order granting Petitioner's motion to proceed pro se.  The May
7, 2003 Order also set June 6, 2003 as the deadline for filing an
opening brief, and stated that "[n]o further extensions of this
deadline will be granted."  (D.I. 30.)  According to Petitioner,
the Delaware Supreme Court sent the May 7, 2003 Order to the
Pennsylvania prison, and Petitioner contends that he did not

15

receive the Order until May 15, 2003, three days after he was returned to the Pennsylvania prison.   (D.I. 30, at 11.)

Thereafter, in response to several letters filed by Petitioner regarding his inability to obtain portions of the record, the Delaware Supreme Court clerk sent a letter dated June 4, 2003 to Petitioner's former counsel, directing counsel to forward certain portions of the record to Petitioner.   The letter also advised that appellant's opening brief would be due on July 7, 2003.   (D.I. 4, at A-39, No. 28.)   Petitioner, presumably unaware of the extended deadline, mailed his opening appellate brief on June 3, 2003, and it was entered on the docket as filed on June 5, 2003.   See Id. at Nos. 31, 32; (D.I. 3, at 12.) Sometime between June 13, 2003 and June 18, 2003, Petitioner's former counsel sent Petitioner the Delaware Supreme Court's letter along with the items from the record.

Petitioner challenges his delayed notification of the original June 6, 2003 filing deadline and contends that he was unable to include all of his claims in the appellate brief because he missed "eight (8) days on the thirty (30) days allotted to file [an] appeal." (D.I. 3, at 12.)   However, the Court concludes that the delayed notification did not violate Petitioner's due process rights for several reasons.   First, there is absolutely no indication that the Delaware Supreme Court deliberately attempted to prevent Petitioner from pursuing his

16

direct appeal by providing delayed notification of the filing deadline.  Second, Petitioner attended the April 11, 2003 evidentiary hearing regarding his request to proceed pro se and he knew that the Superior Court found him competent in his decision to proceed pro se and that the Superior Court judge was going to "do an order to the [Delaware] Supreme Court to this effect."  (D.I. 30, Del. Super. Ct. Crim. Dkt. at No. 30.) Therefore, Petitioner knew as early as April 11, 2003 that he would be responsible for filing an opening appellate brief in the immediate future, and he could have started to formulate his appellate claims at that point in time.

Most importantly, however, Petitioner received actual notice of the June 6, 2003 deadline on May 15, 2003, leaving 22 days for him to timely file an appellate brief.  The record reveals that Petitioner sent his appellate brief to the Delaware Supreme Court via mail on June 3, 3003.  (D.I. 30, Del. Sup. Ct. Dkt. at No. 29.)  Petitioner actually composed his 22 page appellate brief containing 9 claims in 19 days, and the Court fails to see how Petitioner was unable to include simple statements of additional claims in his brief if he so desired.  Thus, the Court concludes that Petitioner's actual notice of the filing deadline was sufficient and satisfied the minimum requirements of due process.

The Court also finds unavailing Petitioner's contention that his due process rights were violated because he received notice

17

of the extended filing deadline after he had already filed his
opening appellate brief. The record indicates that Petitioner
received actual notice of the deadline extension no later than
June 18, 2003. Petitioner has not provided, and the Court has
not found, any caselaw or state court rule indicating that
Petitioner's original filing of his opening brief under the
initial deadline would have nullified the new filing deadline of
July 7, 2003. Consequently, it appears that Petitioner could
have amended or supplemented his original appellate brief within
the extended time-period, yet, Petitioner made no such attempt
during the 19 days remaining in that time-period. In these
circumstances, the Court concludes that Petitioner's actual
notice of the deadline extension satisfied due process.
Accordingly, the Court will deny Claim Three.

### C.  Claim Four: Habitual Offender Hearing

In his fourth claim, Petitioner contends that the Superior
Court failed to inform Petitioner about his right against self-
incrimination during the habitual offender portion of the plea
colloquy. On post-conviction appeal, the Delaware Supreme Court
denied the claim as procedurally defaulted under Rule 61(i)(3)
because Petitioner failed to raise the claim on direct appeal.

By applying the procedural bar of Rule 61(i)(3), the
Delaware Supreme Court articulated a "plain statement" under
Harris v. Reed, 489 U.S. 255, 263-4 (1989) that its decision

18

rested on state law grounds.  This Court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review.  See McCleaf v. Carroll, 416 F. Supp. 2d 283, 296 (D. Del. 2006);  Mayfield v. Carroll, 2005 WL 2654283 (D. Del. Oct. 11, 2005).  Thus, the court cannot review the merits of Claim Four absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause for his procedural default by asserting the same argument contained in Claim Three, namely, that he did not present his self-incrimination claim on direct appeal because the Delaware Supreme Court failed to timely advise him of the new briefing schedule and he ran out of time while preparing his appellate brief.  The Court has already determined this argument to be without merit.  Moreover, Petitioner was present at his habitual offender hearing and clearly knew about the alleged violation of his right against self-incrimination at that point in time.  The Court fails to see how Petitioner's delayed notification of the briefing schedule prevented him from including this claim in his extensive 22 page brief.  Thus, Petitioner has not established cause sufficient to excuse his procedural default.

19

In the absence of cause, the Court will not address the issue of prejudice.  Additionally, given Petitioner's failure to provide the Court with new and reliable evidence of his actual innocence, the Court concludes Petitioner has failed to demonstrate that his claim should be reviewed in order to prevent a miscarriage of justice.  Accordingly, the Court will deny Claim Four as procedurally barred.

### D.   Claim Five: Post-conviction Evidentiary Hearing

In Claim Five, Petitioner complains about the Superior Court's failure to conduct an evidentiary hearing regarding his ineffective assistance of counsel claims.  This claim fails to assert an issue cognizable on federal habeas review because it asserts an error in Delaware's post-conviction relief proceeding. See Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004); Williams v. Carroll, 2003 WL 328779, at *4 (D. Del. Feb. 12, 2003).  Accordingly, the Court will deny Claim Five.

### E.   Claim Six: Interstate Agreement on Detainers

In his final claim, Petitioner asserts that he was illegally sentenced as an habitual offender under the Interstate Agreement on Detainers ("IAD").  Specifically, Petitioner contends that Section 2549 of Delaware's version of the IAD precludes the application of habitual offender laws to "anyone who is brought to final disposition by use of the Interstate Agreement on Detainers."  (D.I. 3, at 19.)

20

The IAD is a compact adopted by states "to encourage expeditious and orderly disposition of outstanding criminal charges filed against a person incarcerated in a different jurisdiction." Cooney v. Fulcomer, 886 F.2d 41, 43 (3d Cir. 1989). Delaware's version of the IAD is codified at Del. Code Ann. tit 11, § 2540 et seq, and claims alleging violations of the IAD are generally cognizable in federal habeas proceedings. See McCandless v. Vaughn, 172 F.3d 255, 263 (3d Cir. 1999); Fisher v. Carroll, 375 F. Supp. 2d 385, 394 n.12 (D. Del. 2005).

Nevertheless, the Court concludes that Petitioner's argument is unavailing. Section 2549 provides that "[n]othing in [Delaware's IAD] shall be construed to require the application of the habitual offenders law to the any person on account of any conviction had in a proceeding brought to final disposition by reason of the use of the agreement." Del. Code Ann. tit. 11, § 2549. By its own terms, Section 2549 merely grants a Delaware court discretion to apply Delaware's habitual offender laws in detainer situations; Section 2549 does not prevent the application of Delaware's habitual offender law to a defendant brought to Delaware under the IAD. Thus, the Court will deny Claim Six as meritless.

**IV. CERTIFICATE OF APPEALABILITY**

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a

21

certificate of appealability.  See Third Circuit Local Appellate
Rule 22.2.  A certificate of appealability is appropriate when a
petitioner makes a "substantial showing of the denial of a
constitutional right" by demonstrating "that reasonable jurists
would find the district court's assessment of the constitutional
claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  Slack v.
McDaniel, 529 U.S. 473, 484 (2000).  Additionally, if a federal
court denies a habeas petition on procedural grounds without
reaching the underlying constitutional claims, the court is not
required to issue a certificate of appealability unless the
petitioner demonstrates that jurists of reason would find it
debatable: (1) whether the petition states a valid claim of the
denial of a constitutional right; and (2) whether the court was
correct in its procedural ruling.  Id.

The Court has concluded that Petitioner's habeas claims do
not warrant relief.  In the Court's view, reasonable jurists
would not find this conclusion to be debatable.  Accordingly, the
Court declines to issue a certificate of appealability.

**V.  CONCLUSION**

For the reasons discussed, Petitioner's Application For A
Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be
denied.

An appropriate Order will be entered.

22